Jane DOE, Plaintiff–Appellant,

v.

**ALLIED–SIGNAL, INC.,
Defendant–Appellee.**

No. 91–3934.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1992.

Decided Feb. 9, 1993.

Timothy J. Abeska (argued), Roemer &
Mintz, Carmen M. Piasecki, Thomas H.
Singer, Eugenia S. Schwartz, Nickle and
Piasecki, South Bend, IN, for Jane Doe.

Thomas J. Piskorski, Lawrence C. DiNardo (argued), Seyfarth, Shaw, Fairweather

& Geraldson, Chicago, IL, Robert H. Michaud, Allied–Signal, Inc., Law Dept., South Bend, IN, for Allied–Signal, Inc.

Before CUMMINGS, Circuit Judge, PELL, Senior Circuit Judge, and KAUFMAN, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

This Court has not had to decide whether a federal court may remove to its own jurisdiction a suit first filed in state court in order to protect a previous federal judgment based entirely on an interpretation of state law. The district court in this case, assuming that it had jurisdiction, removed plaintiff's action to federal court. It then used *res judicata* principles to toss out the suit as an attempt to relitigate claims heard and rejected in a case we decided in 1991: *Doe v. Allied–Signal, Inc.*, 925 F.2d 1007 (7th Cir.) (*"Doe I"*). We need not answer this ticklish question about a federal court's power to guard earlier decisions because the current suit (*"Doe II"*) is not, in fact, the equivalent of *Doe I*. *Res judicata* does not apply. With no federal judgment to protect, and no other basis for federal jurisdiction, the district court lacked subject matter jurisdiction and should not have removed the case from Indiana courts in the first instance. We reverse and remand so that the judge may send the matter back to state court where it belongs.

## I.

The plaintiff, known here as Jane Doe, was hired in 1975 as a janitor for Allied–Signal, Inc. ("Allied"). Thirteen years later, in February 1988, Doe was twice attacked while working on Allied's premises. She was first assaulted on February 17 while taking trash to a dumpster. She was attacked a second time and raped just eight days later while cleaning one of Allied's offices. Her attacker or attackers were never found. Doe filed suit in Indiana court against Allied based on the second attack, alleging that the company was negligent in failing to provide adequate security. A negligence suit against an employer is ordinarily barred in Indiana under that state's Worker's Compensation Act, IND. CODE §§ 22–3–1–1 through 22–3–11–6. However, Doe believed that she was no longer an employee because Allied had fired its entire cleaning staff in January 1987 in favor of Acme Service Corporation ("Acme"), a firm that cleans buildings on a contract basis. The contract required Acme to hire former Allied janitors and pay them higher hourly wages than other Acme workers and to provide them with insurance benefits.

Before she was attacked, and so before she filed the first lawsuit, Doe was told repeatedly by Allied that she was no longer its employee. Upon the filing of *Doe I*, however, Allied switched gears. After having the suit removed to federal court based on diversity jurisdiction, the company claimed that Doe was, after all, a joint employee of Allied and Acme and so could not sue Allied because of the employer exemption for negligence under Indiana law. Allied trotted out numerous examples of how it controlled Doe's workplace: Allied secured Doe's job with Acme and prohibited any transfer, its supervisors heard various complaints from Doe, reprimanded her in one instance, signed her timecards when the Acme supervisor was not present, saw her every day, and occasionally assigned her additional tasks. It was understood that Acme could not fire Doe without Allied's permission and, while Acme owned the cleaning equipment used by Doe, it had bought the equipment from Allied and these items never left Allied's building.

The district court agreed with the company that Allied was Doe's joint employer and dismissed the suit at the summary judgment stage. It also assessed Doe $10,731.76 in costs. We affirmed because Indiana's worker's compensation laws did not leave us room to find that Allied should be estopped, based on its representations to Doe, from claiming it was not her employ-

---

[*] The Honorable Frank A. Kaufman, Senior District Judge in the District of Maryland, is sitting by designation.

er. *Doe I*, 925 F.2d at 1009 n. 2. However, we found it "unsettling that Allied could vehemently deny that Doe was its employee before this lawsuit yet still retain its immunity." *Id.* Since the 1988 rape, Doe has been disabled and is receiving $190 per week in worker's compensation. After losing her case against Allied, Doe filed this action in Indiana state court alleging fraud and breach of contract against both Allied and Acme, and a separate claim against Allied seeking punitive damages.[1] The first count alleges that Allied and Acme breached their contract with her. The other counts claim that Allied, with full knowledge of the truth or reckless disregard of the truth, misrepresented to Doe that she was not an Allied employee and led her to file a doomed lawsuit based on a negligence theory.

In response to a motion from defendant, the district court removed the case from state court. Because the joining of Acme destroyed diversity, the only basis for subject matter jurisdiction was the supposed existence of a federal question. This brings us around to the issue posed at the outset of this opinion: whether the protection of a previous federal judgment interpreting state law is a federal question sufficient to confer subject matter jurisdiction on a district court. In dismissing plaintiff's suit, Chief Judge Sharp asked a different and irrelevant question, which is: Does a federal court have jurisdiction generally to protect its judgments? He answered in the affirmative, and that is correct. However, the judge did not consider the precise issue in this case concerning the distinction between judgments based on diversity and those based on a federal question. After simply assuming jurisdiction, the district court proceeded to dismiss Doe's suit against Allied as a rehash of *Doe I* and sent the claim against Acme back to state court.

 The court's resolution of *Doe II* was mistaken. A federal court may remove to its jurisdiction a civil suit filed in state court so long as the district court has original jurisdiction. 28 U.S.C. § 1441.

Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. *Illinois v. Kerr–McGee Chemical Corp.*, 677 F.2d 571, 576 (7th Cir.1982), certiorari denied, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618. Any doubt regarding jurisdiction should be resolved in favor of the states. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976), and the burden of establishing federal jurisdiction falls on the party seeking removal. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). One measure of the limited scope of the removal power is the well-established doctrine that a case may not be heard in district court when the only federal question posed is raised by a defense argument, even if the plaintiff anticipated the defense argument and even if both parties concede the federal question is the only real issue in the case. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). There is no dispute that the district court lacked diversity jurisdiction in this case, meaning that the court only had subject matter jurisdiction if it was able to pluck a legitimate federal question out of the filings. Courts usually determine jurisdiction based on a well-pleaded complaint. See *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir.1992) (noting existence of well-pleaded complaint rule). Indeed, a plaintiff may avoid federal court even though certain federal questions may be implicit in his or her claim. *Id.* (citing *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). However, a plaintiff may not dodge federal court, and so engage in dreaded forum shopping, by "artful pleading." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) (quoting 14 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722 (1976)). In other words, a plaintiff cannot deny a defendant access to federal court if the actual nature of the complaint is federal.

 Is a previous judgment in a United States court sufficiently federal in na-

---

1. The district court remanded to state court Doe's suit against Acme.

ture such that it gives a district court removal power? The answer is a clear yes if the first judgment is an interpretation of federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). In *Moitie*, for example, the Supreme Court approved removal to support a district court's *res judicata* judgment. Plaintiffs filed an essentially identical claim in state court after their antitrust action was dismissed in federal court. *Id.* Though federal jurisdiction in the underlying case in *Moitie* was based on both diversity and a federal question, the dismissal of plaintiffs' claims under the Sherman Act was unquestionably related to the federal question. Thus in the subsequent suit involving *res judicata,* there was a judgment on the merits of a federal question to protect. By contrast, in the instant case the only federal judgment to protect is a determination of state law which binds state courts only in the same case. The sole reason the issue was in federal court to begin with was the fortuity that the parties happened to be citizens of different states.

As a matter of policy, state courts are fully capable of invoking *res judicata* to protect federal judgments if the second case is really an attempt to regenerate dead claims. Indeed, the *res judicata* impact of a federal judgment is a question of federal law which a state court is bound to apply under the Supremacy Clause. *Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368, 1376 (9th Cir.1987), certiorari denied, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106. In any event, apparently the only court to grapple with the precise question raised by this case is the Ninth Circuit in *Ultramar America, Ltd. v. Dwelle,* 900 F.2d 1412 (1990), which found jurisdiction wanting. As the Ninth Circuit said:

> The situation where a prior federal judgment was grounded in state law has never been reached. We hold that when the prior federal judgment was grounded in state law, the state claims contained in a subsequent action filed in state court cannot be recharacterized as federal for purposes of removal.

*Id.* at 1417. Allied seeks to paint *Ultramar* as an example of extremism run wild in the Ninth Circuit, claiming that the decision is at odds with precedent in both the Ninth Circuit and elsewhere, including precedent in this Court. *Ultramar* may or may not be correctly decided, but defendant's attack on the decision as an affront to precedent is not supported by the cases it cites. Indeed, only by distorting these other decisions can one conclude that federal courts have unassailable power under *res judicata* to guard diversity judgments. In *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423 (9th Cir.1984), for example, a case cited by defendant, the Ninth Circuit upheld a district court's removal to support a *res judicata* judgment, but the claim involved violations of the Sherman Act; the federal court was protecting a previous judgment on a federal question. And in *Sullivan,* 813 F.2d at 1376, there was no federal judgment to protect (plaintiffs filed in state and federal courts simultaneously), *res judicata* was not raised, and the court remanded the matter back to the state.

This Court's closest consideration of the matter came in *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361 (7th Cir.1988), certiorari denied, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117. There we upheld removal where the plaintiff neglected to plead diversity jurisdiction in the alternative. After plaintiff's primary claim involving a federal question was dismissed, the district court declined to exercise pendent jurisdiction over related state claims. The plaintiff filed a second claim in state court. However, the federal court removed the state case to its jurisdiction not because of the previous federal judgment—indeed, the district judge never discussed *res judicata*—but on diversity grounds. In any event, the underlying judgment in *Shaver* supposedly protected by *res judicata* was founded on a federal question, not, as in this case, diversity jurisdiction. In a footnote discussing removal authority, we also noted the untenability of the assumption—inherent in defendant's arguments here—that state courts will ignore the *res judicata* effect of

a federal judgment. *Id.* at 1366–1367 n. 2.[2] Rather, this Court chooses to assume that state courts will honor our judgments.[3]

## II.

▮▮▮▮ Other than noting that the district court mistakenly assumed we had resolved the question, we need not decide whether federal courts may protect diversity judgments because plaintiff's suit, ultimately, is not barred by *res judicata*. That doctrine prohibits a party from relitigating issues that could have been raised in an earlier action, *C.I.R. v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), in contrast to collateral estoppel, which bars the resurrection of issues that were actually litigated and decided. *Lee v. City of Peoria*, 685 F.2d 196, 198 (7th Cir.1982). *Res judicata* is designed to ensure the finality of federal judgments in order to encourage reliance on judicial decisions, bar vexatious litigation, and free courts to resolve other disputes. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). For federal *res judicata* to apply, there must be (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or privies in the two suits. *Brown v. J.I. Case Co.*, 813 F.2d 848, 854 (7th Cir.1987), certiorari de-

nied, 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (quoting *Lee*, 685 F.2d at 199).

▮▮▮▮ The parties do not dispute that *Doe I* rendered a final judgment on the merits of the negligence claim against Allied, and that both Doe and Allied were parties to *Doe I.* The disagreement, then, is whether the causes of action in both cases are equivalent. This Court analyzes causes of action according to the so-called "same transaction" test. *Alexander v. Chicago Park District*, 773 F.2d 850, 854 (7th Cir.1985), certiorari denied, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894; *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1241 (7th Cir.1983); *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939. Under the same transaction test, a cause of action consists of a "single core of operative facts" giving rise to a remedy. *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986) (quoting *Alexander*, 773 F.2d at 854). The inquiry, focusing on the facts of a situation, is intended to discover whether the plaintiff could have raised the issue in the first suit. *Moitie*, 452 U.S. at 398, 101 S.Ct. at 2427. "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost." *Car Carriers*, 789 F.2d at 593. A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory. *Al-*

---

2. Defendant also argues that federal courts have jurisdiction to safeguard previous diversity judgments because of the language of the federal anti-injunction statute, 28 U.S.C. § 2283, which gives a federal court power to enjoin a state proceeding "to protect or effectuate its judgments." A federal court may exercise its power under § 2283 if *res judicata* would bar the same action in federal court. *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 947 (7th Cir.1981). For reasons set forth elsewhere in this opinion, *res judicata* does not apply in this case and so § 2283, which turns on the application of *res judicata* principles, provides no more favorable result for Allied than removal to federal court. More to the point, Allied did not seek an injunction under § 2283. As it states in its brief, "Allied *could* have filed suit in federal court to enjoin Plaintiff's state court action" (defendant's brief at 8) (emphasis added). Nor do we agree that this provision necessarily proves that federal courts do have removal power over previous federal judgments founded in diversity. Indeed, if district courts do have the

jurisdiction that Allied suggests, § 2283 is redundant.

3. Defendant makes the somewhat bizarre argument that the case is properly in federal court because Doe alleges fraud in connection with a prior federal judgment, and fraud on the court confers federal question jurisdiction. The case cited for this proposition, *Villarreal v. Brown Exp., Inc.*, 529 F.2d 1219 (5th Cir.1976), involved a plaintiff's claim that defendant tampered with evidence during a trial. The fraud in *Villarreal*, in other words, went to the heart of the legitimacy of the judgment. Doe makes no such claim of fraud on the court. All that she alleges is that Allied defrauded *her* by lying about her employment status. Allied would have a point if Doe were claiming that the firm lied during deposition testimony when its representatives admitted misleading her. However, we understand Doe's argument to be that Allied defrauded her during the course of her employment, not during the trial.

*exander*, 773 F.2d at 854. We have rejected invitations drawing on state *res judicata* principles to narrow the breadth of claim preclusion by altering the same transaction test. See, *e.g., Matter of Energy Co-op., Inc.*, 814 F.2d 1226, 1231 n. 6 (7th Cir.1987), certiorari denied, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254.

The district court held that *Doe II* arose from the same set of operative facts as *Doe I* and that its claims could have been raised in the earlier suit. At first blush this is an appealing reading of the facts of this case, but upon closer examination we disagree with the district court's conclusion. While it is probably true that plaintiff would not have brought *Doe II* had it not been for the February 25, 1988, rape on Allied's premises, the facts of the rape—which formed the basis for the negligence claim in *Doe I*—are irrelevant to the instant case. *Doe II* concerns Allied's alleged breach of contract and defrauding of Doe; it has almost nothing to do with negligence leading to a rape. Doe's breach of contract and fraud claims are not new legal theories grafted onto an old set of facts, they are different claims altogether. This should be obvious if one asks: what was the critical transaction in each case? In *Doe I*, the transaction, if you will, was the rape and Allied's alleged negligent failure to protect workers on its property. The critical transaction in *Doe II* is Allied's supposed misrepresentation to Doe about her status as an employee.[4]

■ Defendant argues that Doe could have raised these issues in *Doe I*. While it is true that *Doe I* eventually got bogged down in Doe's status as an employee of Allied, Doe had no idea that Allied was her joint employer until after she filed the negligence suit. Allied now asserts that Doe was not diligent in investigating the facts before filing *Doe I*. If the plaintiff is un-

aware of facts when filing a complaint, *res judicata* will not bar subsequent litigation. *Himel v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 596 F.2d 205, 210 (7th Cir.1979). However, a plaintiff will be precluded from raising these facts later if, by exercising due diligence, he or she could have discovered the relevant information before filing the initial suit. *Id.* Doe could not have learned about Allied's alleged fraud and breach before she filed the negligence suit for Allied told Doe repeatedly that she was an employee of Acme alone. Only after *Doe I* was lodged did Allied assert that Doe was a joint employee of both companies. No amount of diligence could have alerted Doe that Allied would turn around and admit that it had blatantly lied about her status over a period of years. One could argue that the central fact pattern—Allied's statements to Doe from 1987 when it contracted with Acme until the time Doe filed *Doe I*—was completed before the first suit was lodged. Yet a critical piece of the puzzle was Allied's change of tactics during the lawsuit. Without this information, Doe could not have known that she had a claim. Moreover, even if a plaintiff is aware of the factual basis for a suit at the filing of another suit, he or she is not obligated to bring all claims together if they do not arise out of the same transaction. *LaSalle Nat. Bank of Chicago v. County of DuPage*, 856 F.2d 925, 933–934 (7th Cir.1988), certiorari denied, 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840. And, as noted above, the relevant transaction (for want of a better word) in *Doe I* was the rape, resulting from Allied's supposed failure to provide security. To the extent that *Doe I* turned on questions of Doe's employment status, the key transaction was Allied's involvement in Doe's day-to-day job responsibilities. These facts

---

4. Count One of Doe's complaint, which discusses the contractual relationship between Allied, Acme and Doe, presents a closer question in that it could be read to fault the companies for allowing the rape of Doe to occur. However, the overwhelming thrust of Doe's complaint focuses on alleged misrepresentations concerning her employment status. Since our mandate is

to interpret federal jurisdiction narrowly, and to evaluate jurisdiction based on the whole of a well-pleaded complaint, *Burda v. M. Ecker Co.*, 954 F.2d 434, 441 n. 8 (supporting removal where federal claims are essential to recovery), we are forced to conclude that *Doe II* is not a rehash of *Doe I*.

bear precious little resemblance to the representations made by Allied to Doe over a several-year period about her employment status, which form the crux of the second case. Therefore, even if Doe should have known the relevant facts for *Doe II* at the filing of *Doe I*—which she did not—she would have still been justified in not including fraud and breach claims in the first lawsuit.

 Defendant next suggests that Doe should have amended her complaint to include these issues after Allied began asserting that it was her employer. However, plaintiffs need not amend filings to include issues that arise after the original suit is lodged. *Green v. Illinois Dept. of Transp.*, 609 F.Supp. 1021, 1026 (N.D.Ill. 1985). As Professors Wright, Miller and Cooper suggest:

> Substantial disruption could result from forced amendment at any time after significant discovery has been accomplished, and it is hard to justify any test relating to the progress of discovery or other pretrial events so clear that plaintiffs could afford to apply it without seeking explicit judicial guidance. Perhaps the best rule would be that claims for damages need include only matters arising out of injuries inflicted before the commencement of suit * * *.

18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4409 (1981). Since Doe's breach of contract and fraud claims did not actually arise until Allied began claiming that it was her employer, she should not have been forced to amend her complaint to include these allegations. More to the point, Doe *could not* have amended the complaint in *Doe I* to include fraud and breach of contract claims because she had sustained no damages until the resolution of the case. If we put ourselves for the moment in the shoes of plaintiff during the proceedings in *Doe I*, we have just learned that Allied is claiming to be our employer. Let us say that we realize the firm has defrauded us and breached our contract. What effect has this had on us in financial terms? None at all. If we do amend our complaint to include fraud and breach of contract claims, we will be booted out of court for lack of damages, and probably sanctioned in the bargain. It is only when Allied wins the case on the ground that it is our employer that we suffer damages from the fraud and breach.

In other words, the judgment in *Doe I* is itself the damage supposedly suffered by plaintiff as a result of Allied's behavior. That lawsuit cost her $32,907.19 plus the $10,731.76 in costs assigned by the court. It is unusual, we admit, for a former judgment to form the basis for a damages claim. The Indiana courts may well reject Doe's fraud and breach claims for this or other reasons. We do not pass judgment on the merits of plaintiff's claims; we hold only that this suit differs from *Doe I*. Indeed, if Doe had brought the fraud and breach claims in the earlier case, not only would she have been tossed out of court, but upon the filing of another suit Allied would have come right back—quite justifiably—with a *res judicata* defense. We would twist *res judicata* grotesquely out of shape by holding that a plaintiff must include not only all claims arising from the same transaction, but must anticipate future harms from adverse judgments yet to be rendered.

In short, the district court erred in removing and then dismissing Doe's suit against Allied under *res judicata* principles. We reverse and remand with instructions to the district judge to send the case back to Indiana state court.