Kent Schnack, Schnack Law Offices, Quincy, IL, for Plaintiff.

Mark B. Blocker, Sidley & Austin, Chicago, IL, for Defendant.

**QUINCY MALL, INC., Plaintiff,**

v.

**PARISIAN, INC., Defendant.**

No. 00–3059.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 30, 2000.

### ORDER

SCOTT, District Judge.

This cause is before the Court on Defendant Parisian, Inc.'s (Parisian) Motion To Dismiss. Quincy Mall, Inc. (Quincy) sought to recover the same damages in both a bankruptcy proceeding and in this action. The Bankruptcy Court ruled adversely to Quincy on all issues. Parisian argues that Quincy's claim in this Court is barred by res judicata. Quincy argues that res judicata is not applicable here so that its claim may go forward. Quincy raises a separate claim in this Court from its claim in the bankruptcy proceeding; thus, res judicata is not a bar. However, the Bankruptcy Court ruled adversely to Quincy on all issues, including whether it had suffered any damage. Quincy is thus barred in this action by collateral estoppel from asserting an essential element of its claim, being damages. Parisian's Motion to Dismiss therefore will be ALLOWED.

For purposes of this motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw all inferences in the light most favorable to the non-moving party. *Hager v. City of West Peoria,* 84 F.3d 865, 868–69 (7th Cir.1996); *Covington Court, Ltd. v. Village of Oak Brook,* 77 F.3d 177, 178 (7th Cir.1996). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). In ruling on this motion, the Court may consider documents contained in the court file of the bankruptcy proceedings. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994).

## FACTS

Quincy leased real property to Parisian's predecessor, Bergner of Illinois (Bergner), pursuant to a Lease dated May 16, 1977. On January 1, 1979, the City of Quincy, Illinois (City) issued industrial development revenue bonds and loaned the proceeds to Bergner to finance construction of a shopping mall on space leased from Quincy. To secure Bergner's obligations, Quincy and Bergner granted the City a mortgage lien and a security interest in Quincy's right, title and interest in the property, including leases, subleases, and rents. The mortgage obligated Bergner to make payments to the Bond Trustee and for Quincy to make the payments if Bergner defaulted. The City assigned its

rights under the mortgage to Bank One, Peoria (Bank One).[1] Bank One became indenture trustee for the bonds.

On August 23, 1991, Bergner filed for Chapter 11 bankruptcy protection. In January of 1992, Bergner defaulted on the payment due on the industrial revenue bonds, putting Quincy's fee interest in the leased property at risk. On March 19, 1992, Quincy filed a proof of claim with the Bankruptcy Court for loss resulting from any liability it would incur to Bank One as a result of Parisian's breach of the mortgage.[2] Quincy's claim arose during the pendency of Bergner's bankruptcy and so it was subject to the bankruptcy reorganization. *See* 11 U.S.C. §§ 501(d); 502(e)(2).

On November 9, 1992, Bergner and Quincy entered into a letter agreement which amended the 1977 lease.[3] The agreement provided, among other things, that if Bergner failed to pay Quincy minimum rent and/or percentage rent payments as a result of a foreclosure, Bergner would pay Quincy an amount equal to the minimum rent and percentage rent it would otherwise owe.[4]

On December 11, 1992, Bank One foreclosed on the mortgage in the Circuit Court of Adams County, Illinois. At Bank One's request, the court appointed a receiver who took possession of Quincy's fee interest in the property. While this was proceeding, the Bankruptcy Court entered its Confirmation Order on Bergner's Fourth Amended Joint Plan of Reorgani-

1. The mortgage provides that the Mortgagor (Bergner) and Landlord (Quincy) "have executed and delivered this Mortgage and by these presents do each hereby grant, bargain, sell, alien, enfeoff, release, pledge, mortgage, warrant and confirm to the Mortgagee [City of Quincy], and do hereby grant a security interest to the Mortgagee in, all of the Mortgagor's and Landlord's estate, right, title and interest in, to and under any and all of the following described property ... whether now owned or held or hereafter acquired." The mortgage also provided that filing bankruptcy is a default under the mortgage and it authorized Bank One to collect rents in the event of a default.

2. The original proof of claim stated that it was to "cover the future potential loss of its [Quincy's] rents and/or fee simple title which are subject to the terms of the mortgage ...."

3. The agreement provided that "Tenant shall petition the Court in the Case to permit Tenant to assume the Lease and the Operating Agreement in their existing forms except only for the amendments and/or agreements outlined in this proposal ...."

4. The parties agreed to modify the lease by the terms of the letter agreement pursuant to 11 U.S.C. § 365(b)(1)(C).

zation in October, 1993. The Confirmation Order indicated that the Bankruptcy Court retained jurisdiction to resolve disputed claims. *See* 11 U.S.C. §§ 1141(b); 1141(c).

In 1994, the receiver began to receive rents from Bergner that were formerly payable to Quincy. On May 17, 1995, Quincy demanded that Bergner pay it for lost rents in accordance with the letter agreement.[5] Bergner refused and questioned the effectiveness of the letter agreement. Quincy wrote a letter on May 26, 1995, again requesting Bergner to acknowledge the effectiveness of the letter agreement, which Bergner refused to do. As a result of Bergner's alleged anticipatory repudiation of the letter agreement, Quincy entered into a settlement with Bank One, the Chapter 11 Trustee, to prevent a foreclosure. Under the settlement, Quincy paid Bank One $600,000 and gave up other valuable rights. During this period, Bergner merged with and became known as Carson, Pirie Scott & Co., and then Parisian.

In December 1999, Quincy filed an amended claim to which Parisian objected. The amended claim was to set the amount of Quincy's liquidated damages arising from the mortgage default as directed by the Bankruptcy Court in its order of October 6, 1999. The United States Bankruptcy Court for the Eastern District of Wisconsin set the objection to the claim for trial during the week of May 15, 2000. On February 7, 2000, however, Quincy filed a Complaint For Declaratory Judgment against Parisian in the Circuit Court of the Eighth Judicial Circuit in Adams County, Illinois. In its Complaint, Quincy alleges that Parisian's conduct constituted an anticipatory repudiation of the letter agreement. Quincy seeks to hold Parisian liable for the same $600,000 in damages it suffered by settling with Bank One. Quincy's Complaint requests that the parties' rights and liabilities be declared, that Parisian be found to have breached its lease, and that Parisian be found to have anticipatorily breached the letter agreement.

Before this filing, Quincy filed a Motion to Withdraw its Claim in the Bankruptcy Court to which Parisian objected. Parisian disputed that it was liable for the alleged damages. Parisian specifically stated that it paid all sums due and owing under the letter agreement. Quincy responded by stating Parisian would not be prejudiced by the withdrawal of Quincy's claims with prejudice since Parisian would get the same result as if the claim had been litigated. It said, "if the debtor was successful at trial, the result would be no distribution to Quincy Mall, the same effect as allowing withdrawal." Tr. of Bankruptcy Court Proceedings, Mar. 17, 2000, at 24, quoted by the Bankruptcy Judge on the record. The Bankruptcy Court stated that, "[t]o this court that statement means at a minimum that the withdrawal of the claims on their merits has the same legal effect as [Quincy] trying all triable issues pertaining to the claims and losing on each and every issue. The court is so ruling at this time." *Id.* The Bankruptcy Court then dismissed Quincy's claims with prejudice and on the merits on March 17, 2000.

Parisian removed Quincy's Complaint to this Court and now argues that Quincy's claim is barred by res judicata. Parisian contends that Quincy's Complaint is identi-

---

5. The agreement provided that "[i]f Quincy at any time ceases to receive the minimum rent and/or percentage rent payments required by the Lease as the result of a foreclosure or conveyance in lieu of foreclosure of all or any part of Quincy's title to the Bergner's site in connection with any mortgage or other financing obtained by Bergner's or any judgment rendered against Bergner's to which financing or judgment Quincy's ownership of the Bergner's site is subordinate or subject, then in addition to the payments required by the first paragraph of this Section 6.5, Bergner's shall pay to Quincy as an additional contribution to Quincy toward the costs of repairs, utilities, taxes, insurance and maintenance of the Mall an additional sum equal to the minimum rent and percentage rent payments which would have been received by Quincy pursuant to the Lease if such foreclosure or conveyance had not occurred."

cal to its claim filed in the bankruptcy action that was dismissed, and thus its claim before this Court is barred by the former proceedings. Quincy argues that its claim is not barred by res judicata because: (1) the causes of action are not identical; (2) the Bankruptcy Court lacked jurisdiction of the case at bar; (3) the first action was begun before the second action accrued; and (4) statements made by the Bankruptcy Court are not determinative in this case.

## ANALYSIS

■ Quincy is correct when it claims that its rights under the lease, as modified by the letter agreement, are separate from the bankruptcy claim. The original bankruptcy claim is based on Parisian's breach of the mortgage in 1992, which threatened Quincy's fee interest in the property. The instant claim is based on a breach of the lease and letter agreement. Parisian assumed the lease, as modified by the letter agreement, pursuant to 11 U.S.C. § 365. Once that occurred, Parisian was obligated to cure any or all defaults and perform all of its obligations under that lease and letter agreement. Parisian allegedly breached that agreement in 1994, when the receiver started collecting the rents, and Parisian did not make the additional payments to Quincy under the letter agreement. The claims therefore are distinct for res judicata purposes. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 915 (7th Cir.1993).

Quincy, however, seeks the same damages in both the bankruptcy claim and in its claim before this Court. The issue, therefore, is whether the Bankruptcy Court's determination against Quincy on all triable issues precludes Quincy from attempting to prove any damage in this case. The Bankruptcy Court's decision precludes Quincy from raising these issues under the doctrine of collateral estoppel if there is (1) an identity of the parties, (2) an identity of the issues, (3) the issues were actually litigated, and (4) the determina-

tion of the issues was essential to the final judgment. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987). The parties are identical. The other elements are also present.

The damages issues in this action were before the Bankruptcy Court. Quincy sought in both actions to recover the $600,000 it paid to Bank One. Quincy specifically asserted in both the bankruptcy claim and in its claim in this action that it paid the money to Bank One to avoid lost rents. Parisian asserted in its objection to the amended claim that it had satisfied all of its obligations to Quincy. Parisian specifically stated that it paid Quincy all sums due and owing under the lease and letter agreement. Thus, the question of whether Quincy suffered lost rents under the lease and the letter agreement was before the Bankruptcy Court.

Moreover, the Bankruptcy Court needed to determine Quincy's rights in this action in order to liquidate Quincy's bankruptcy claim. Quincy filed its amended proof of claim to liquidate the amount to which it was entitled under that claim. To liquidate the claim, the Bankruptcy Court would be required to estimate the amount that Quincy could recover from sources outside the bankruptcy to satisfy that claim. 11 U.S.C. § 502(c)(1). Sums recoverable elsewhere would reduce the bankruptcy claim and leave more bankruptcy assets available to satisfy other creditors. Thus, the Bankruptcy Court needed to estimate the amount that Quincy could recover in this case, outside of bankruptcy, in order to liquidate Quincy's bankruptcy claim. This cause of action was in essence, therefore, before the Bankruptcy Court.

■ Further, the issues were actually litigated for collateral estoppel purposes. Quincy attempted to avoid litigation of the issues before the Bankruptcy Court by seeking withdrawal of its amended bankruptcy claim. Quincy, however, was not free to withdraw the claim because Parisian had objected to the amended claim.

Once a party in interest objects, a creditor can only withdraw its claim with the approval of the Bankruptcy Court. *See* Bankruptcy Rule 3006. Parisian objected to withdrawal because it had spent years in the Bankruptcy Court attempting to resolve this claim; it had the matter close to resolution, and it did not want to start over in a new forum.

Quincy's solution to Parisian's objections was a withdrawal with prejudice. Quincy urged the Bankruptcy Court to allow withdrawal of the claim with prejudice because such a result would be the same resolution as if the claim had been litigated and found in Parisian's favor. The Bankruptcy Court took Quincy at its word, finding all triable issues against Quincy as if the matter had been fully litigated. The Bankruptcy Court had the authority to place "such terms and conditions as the court deems proper" in the order. Bankruptcy Rule 3006. A consent judgment, such as Quincy's consent to the dismissal of its bankruptcy claim with prejudice, is considered a litigation of the issues for collateral estoppel purposes if the parties could reasonably have foreseen the conclusive effect of their actions. *Klingman,* 831 F.2d at 1296. Quincy not only could have reasonably foreseen that the Bankruptcy Court's order would have conclusive effect; it asked for it. All triable issues, including all damage issues, were fully litigated before the Bankruptcy Court for collateral estoppel purposes.

Finally, Quincy's damage claims were essential to the final judgment in the bankruptcy proceeding. The measure of damages was an element of its claim. Parisian disputed whether it was liable for any damages. Parisian particularly denied Quincy's claim for lost rents, alleging that it had paid Quincy all sums due and owing under the lease and letter agreement. The Bankruptcy Court therefore effectively decided that Parisian had paid all sums due and owing to Quincy under the lease and letter agreement. The Bankruptcy Court's decision has preclusive effect.

Quincy cannot prove either a breach of the lease and letter agreement or any damages resulting from Parisian's action. Quincy therefore fails to state a claim.

THEREFORE, Defendant Parisian's Motion to Dismiss (d/e 11) is ALLOWED. This case is closed.