[Civ. No. 26363. Second Dist., Div. Four. Jan. 17, 1963.]

METRO-GOLDWYN-MAYER, INC., et al., Plaintiffs and Respondents, v. MONTE LEE et al., Defendants and Appellants.

24

Mosk & Rudman and Norman G. Rudman for Defendants and Appellants.

Loeb & Loeb and John L. Cole for Plaintiffs and Respondents.

BURKE, P. J.—Plaintiffs, coproducers of a motion picture, brought this suit to enjoin, as unfair competition, use by defendants of an advertising slogan which plaintiffs claim trades and capitalizes on advance publicity covering the title they have adopted for their picture. Defendants' slogan is designed to advertise a picture arising from the same subject matter as plaintiffs' picture. The complaint also alleged damages and sought an accounting of profits. The trial court

awarded a preliminary injunction and defendants appeal. The sole ground relied upon as requiring a reversal of the trial court's order that an injunction should issue is absence of evidence showing the title has acquired a secondary meaning which would entitle plaintiffs to its exclusive use for their film.

The complaint alleges in substance that plaintiffs are engaged in the production, distribution and exhibition of motion pictures. A certain picture, currently in production and three-fourths completed, is based on the lives and works of the Grimm brothers which are literary matters in the public domain. The phrase "The Wonderful World Of The Brothers Grimm," an original and fanciful creation of plaintiffs, has been finally adopted by plaintiffs as the title for their photoplay. They have widely publicized this title in newspapers, magazines and trade journals throughout the United States. The selection of this title was *inter alia* for the purpose of distinguishing plaintiffs' photoplay from other photoplays or literary works derived from the same source.

The complaint further alleges that defendants, intending to release a picture entitled "Grimms Fairy Tales," a film produced in Germany over six years ago, placed an advertisement in the Hollywood Reporter, a trade journal in the film industry, which adopted the phrase "Wonderful World" as an advertising slogan. This advertisement reads:

"A Wonderful World of the Grimm Brothers is depicted in Grimm Brothers 'Grimms Fairy Tales' wide-screen and color soon to be released by Monte Lee Enterprises."

Plaintiffs claim this advertisement capitalizes and trades on the publicity given to their production and is likely to confuse and mislead the public to plaintiffs' irreparable injury.

Trial of the issues was had on exhibits and affidavits submitted by the parties. The exhibits show that plaintiffs' advertisements consisted of references to their film in movie gossip columns, trade journals, newspaper and magazine articles about its stars and other items presented as legitimate news. There were no advertisements devoted solely to plaintiffs' film in space purchased by them, although such was contemplated for the future and an extensive advertising budget had been projected.

Exhibits of defendants' advertising showed particular advertisements in space purchased by defendants to publicize their film. Defendants' advertising was commenced sometime

after plaintiffs had started their program of press releases. None of defendants' advertisements were found objectionable by the trial court save the one described above.

Plaintiffs by affidavit averred their intention to give a distinguishing title to their film. They foresaw a likelihood of public confusion and deception in defendants' use of the phrase "Wonderful World" or the word "wonderful" in publicizing the rival film. It is said there exists in the film industry an economic necessity to advertise and publicize the title of a picture during production and prior to its release in order to create in the minds of the public a desire to see the completed work. They then state that the title adopted for their work was finally agreed upon, registered under a registration system used in the film industry and extensively publicized at great cost.

Defendants' counteraffidavits note the frequent use of the phrase "Wonderful World" to describe sundry literary pieces which have appeared prior to plaintiffs' adoption of it in conjunction with their film. They also point out that none of the references in publications utilized by plaintiffs for their advance publicity campaign caption the articles with the phrase "The Wonderful World" or any of its constituent words, but abbreviate reference to plaintiffs' work with the words "The Brothers Grimm," or just "Grimm." Significantly, they concur in plaintiffs' claim that an economic necessity exists in the film industry to herald the advent of a new film with substantial publicity. Defendants seek to discount this fact only by pointing out that oftentimes pre-release announcements are made for pictures which are never finally exhibited to the public or which are retitled before finally being released. The only conflict raised by defendants' affidavits arises with the conclusion that the public will be neither misled nor confused by defendants' use of "Wonderful World," which is a common phrase often associated with fairy tales.

The trial court enjoined use of the phrase "Wonderful World" in conjunction with defendants' advertising but refused to enjoin use of the words "wonderful" or "world" individually.

In deciding this case we are necessarily governed by settled rules on appeal. ▮ "[T]hus, in ascertaining whether the facts warrant an order granting a preliminary injunction, it is incumbent upon this court to view such facts most

favorably to the plaintiff [citation]; and in considering an order involving the decision of a question of fact made on affidavits, all conflicts must be resolved in favor of the prevailing party [citation], and all reasonable inferences which are to be drawn must be in support of the trial court's order [citation]." (*Family Record Plan, Inc.* v. *Mitchell,* 172 Cal. App.2d 235, 239 [342 P.2d 10].) ▮▮▮ "Whether a preliminary injunction shall be granted rests largely in the discretion of the trial court and will not be reversed on appeal unless there is a manifest abuse of discretion." (*Isthmian S. S. Co.* v. *National Marine etc. Assn.,* 40 Cal.2d 433, 435 [254 P.2d 578]; *Ingrassia* v. *Bailey,* 172 Cal.App.2d 117, 125 [341 P.2d 370].)

The injunction issued here is expressly authorized by section 3369, Civil Code. Subdivision 2 of section 3369 provides: "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction." Unfair competition is defined in subdivision 3 as "unfair or fraudulent business practice and unfair, untrue or misleading advertising." The right of plaintiff to prosecute this action is established in subdivision 5 which provides that actions for injunctions under the section may be prosecuted not only by the Attorney General or any district attorney, but also by any person acting for the interests of itself, its members or the general public. This statute thus recognizes not only the public interest in protection against unfair business practices but also the plaintiff's right to enjoin such unfair practices. (Cf. *Ojala* v. *Bohlin,* 178 Cal.App.2d 292, 301 [2 Cal.Rptr. 919]; *Hair* v. *McGuire,* 188 Cal.App.2d 348, 353 [10 Cal.Rptr. 414].)

This section supports the determination of the trial court here. ▮▮▮ Defendants' advertisement is clearly misleading in that it seeks by imitation of plaintiffs' title to convey the impression that defendants' film is the same or similar to plaintiffs' production. Large type is employed for the phrase "A Wonderful World Of The Grimm Brothers," which is followed by smaller type for the remaining portions of the advertisement. While a literal reading of the language used identifies defendants as the source of the rival film, mere technical accuracy of statements is not a defense where the overall effect is to mislead. ▮▮▮ "'[A] similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law.'" (*Academy of Motion Picture Arts & Sciences* v. *Benson,* 15 Cal.2d 685, 692 [104 P.2d

650].) Thus, it is significant that neither in the trial court nor on appeal has defendant attempted any explanation of why they chose the words ''Wonderful World'' to describe their film. The clear inference is that they hoped to trade on the publicity given by plaintiffs to their film.

■ Actual public deception or confusion arising from misleading advertisements need not be shown. In the law of unfair competition it is the likelihood or probability of public deception that forms the acid test. (*Winfield* v. *Charles*, 77 Cal.App.2d 64 [175 P.2d 69]; *Ojala* v. *Bohlin, supra.*)

A second basis for the decision rendered by the trial court is set out in the statute, to wit: Use of the advertising slogan employed here is manifestly unfair to the plaintiff. Both plaintiff and defendant concur in the view that extensive prerelease publicity is an economic necessity in the film industry. ■ To permit defendants to describe their picture as they have done here allows trading on plaintiffs' expenditure of time, money and effort in securing the necessary advance interest in their film and causes a dilution of the interest generated by those efforts. In other words, it permits diversion of trade to defendants' film at the expense of plaintiffs' efforts by virtue of public confusion arising from defendants' misleading advertisements. ■ '' ' Advertisements stating or suggesting that the one advertising possesses the good will of one well known in business, when such is not the fact, constitutes unfair competition.' '' (*Hoover Co.* v. *Groger,* 12 Cal.App.2d 417, 420 [55 P.2d 529].) This rationale is equally applicable where defendant seeks to take advantage of public desire to see the subject film which has been created by plaintiff's publicity campaign.

It is defendants' position that plaintiffs are not legally entitled to protection by injunction, under the theory of secondary meaning, for the title to a motion picture which has never been shown to the public and which is not yet completed when relief is sought. They assert the title has not been ''used'' because the thing described, i.e. the film, is not yet in existence. To support this position defendants rely upon trademark cases and cases involving protection of proprietary interests in literary titles. It is our view, however, that the problem presented rests upon a different footing. We are dealing here not with the protection of literary titles as such, but with a proposed title used as an element of an advertising and publicity campaign. It is, in

the posture of the case at time of hearing, an imaginative and fanciful phrase employed by plaintiffs as the distinguishing mark of their advertising and publicity for the film.

Use of another's advertising and publicity developments in a misleading manner is no less unfair than adopting a title or trademark which has come to be associated with its first user or his product, and accordingly is afforded protection within the law of unfair competition. (*Hoover Co.* v. *Groger, supra*, 12 Cal.App.2d 417, 420; see 17 A.L.R. 760; 30 A.L.R. 615.) This characterization of the case does not, however, preclude applicability of the concept of secondary meaning. It is simply the context, not the concept itself, that is different here.

Reduced to fundamentals, secondary meaning is a shorthand phrase which describes the existence of conditions from which public confusion will flow if the defendant is permitted to pursue his deceptive scheme (see *Family Record Plan, Inc.* v. *Mitchell, supra*, 172 Cal.App.2d 235, 244). If words have been *used* or *employed* by an author or manufacturer in such a manner that the public has learned to associate them with the thing described, they acquire a secondary meaning (*Jackson* v. *Universal International Pictures, Inc.*, 36 Cal.2d 116, 121 [222 P.2d 433]). In the case of an advertising slogan or other distinguishing feature used in a publicity campaign, its full use is accomplished when employed through communication to the public. If an association is thereby formed in the minds of the public which fixes plaintiffs as the source of something of a particular nature to be available in a particular place, this is sufficient because it follows that public deception may result if a distinguishing feature of the plaintiffs' program is adopted and used in an unfair and misleading manner by another.

Defendants also seek a reversal of the order on the ground that even though the legal foundation for protection is present, here communication to the public, the amount of such communication is insufficient to establish secondary meaning; i.e., that a sufficient segment of the public has not yet associated the proposed title with the forthcoming film.

The sufficiency of public notoriety to establish an association in the minds of the public which will support a finding of secondary meaning is a question of fact (*Johnston* v. *20th Century-Fox Film Corp.*, 82 Cal.App.2d 796, 813 [187 P.2d 474]). Here, there is evidence that plaintiffs' extensive prerelease publicity campaign was carried

into national newspapers, magazines and trade journals and, inferentially, has come to the attention of a large segment of the population. ■ The precise size of this segment of the population is not important in determining whether secondary meaning exists (*Jackson* v. *Universal International Pictures, Inc., supra,* 36 Cal.2d 116, 122), and is sufficient if the segment comprises enough people to contradistinguish them from a few. (*Mary Pickford Co.* v. *Bayley Bros, Inc.,* 12 Cal.2d 501, 514 [86 P.2d 102] ; *Jackson* v. *Universal International Pictures, Inc., supra,* p. 122.) ■ Under the circumstances here it cannot be said the trial court abused its discretion in concluding that sufficient public association arose from plaintiffs' publicity so that a secondary meaning existed which entitles plaintiff to a preliminary injunction.

Defendants argue that the phrase ''The Wonderful World of the Brothers Grimm,'' being composed of common everyday words, requires a stronger showing of secondary meaning than might be true in other cases. While the words and the subject matter, taken separately, may lead to this conclusion, their combination results in an imaginative and unique phrase designed to attract attention and create a sympathetic reaction to the thing described.

■ Common or descriptive words may acquire a secondary meaning (*Academy of Motion Picture Arts & Sciences* v. *Benson, supra,* 15 Cal.2d 685, 690), and where the combination of words is fanciful rather than merely descriptive, they are given stronger protection since the subsequent user has an infinite choice of other names or combinations of words to describe his subject or thing. See e.g. *Eastern Columbia, Inc.* v. *Waldman,* 30 Cal.2d 268, 270 [181 P.2d 865] ; *Stork Restaurant, Inc.* v. *Sabati* (9th Cir.) 166 F.2d 348, 361.) Similarly, defendants' choice of words for a phrase to use as an advertising slogan was equally unlimited.

■ This preliminary order does not purport to fix the ultimate right and obligations of the parties (*Bomberger* v. *McKelvey,* 35 Cal.2d 607, 612 [220 P.2d 729]). The exercise of the trial court's discretion in determining whether or not a preliminary injunction shall issue is based upon a balancing of the respective interests of the parties with the objective of preventing injustice pending trial. ■ As stated in *Williams* v. *Los Angeles Ry. Co.,* 150 Cal. 592, 596 [89 P. 330] : ''Where one or the other of the parties is to suffer by the granting or refusing of an injunction pending

the action, the inconvenience likely to be incurred by each from the action of the court in granting or refusing a temporary injunction should be balanced, and the court should grant or withhold the injunction accordingly.'' (See also *Riviello* v. *Journeyman Barbers etc. Union,* 88 Cal.App.2d 499, 510 [199 P.2d 400].) Thus, in view of the virtually unlimited availability to defendants of other words and phrases to advertise their film, there is no abuse of discretion where the trial court enjoins use of a phrase adopted and used extensively by plaintiffs when it appears irreparable damage might result to the latter and there is no corresponding damage to the former.

Order affirmed.

Jefferson, J., and Ford., J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 13, 1963.

---

*Assigned by Chairman of Judicial Council.