Nancy **DUNCAN, individually and d/b/a "Footsie Wootsie Machine Rentals"; Just Vibrations International, Inc., a California corporation, Plaintiffs–Appellants,**

v.

**Al STUETZLE; Lexington Scenery & Props, a California corporation; Ken Acton; Amuze, Inc., Defendants–Appellees.**

No. 94–55598.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 19, 1995.

Decided Feb. 21, 1996.

Andrew N. Chang, Kelly, Herlihy & Bane, San Francisco, California, for plaintiffs-appellants.

Steven J. Adamski, Esner, Higa & Chang, San Francisco, California, for defendants-appellees.

Before: POOLE, BOOCHEVER, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this fifth round of litigation over rights to a foot massage device, we explore the boundaries of state and federal jurisdiction over trademark infringement.

## I

Nancy Duncan, and her company, Just Vibrations International, Inc., produce and distribute "Footsie Wootsie" foot massage machines designed in the shape of a chair. In early 1990, Al Stuetzle met with Duncan, allegedly to discuss his interest in either purchasing Duncan's business, becoming her exclusive distributor, or leasing one or all of the "Footsie Wootsie" units. Duncan alleges that, during the course of the discussions, she turned over proprietary information on both the existing "Footsie Wootsie," and on a future model to be shaped like a "log" or "barrel," to Stuetzle. Both parties agree that she also asked him to sign a nondisclosure agreement. Stuetzle refused to sign the agreement, apparently because it included a non-competition clause.

On March 5, 1990, allegedly because of Stuetzle's refusal to sign the agreement, Duncan broke off the discussions. She also threatened litigation in federal court if Stuetzle used the proprietary information for his own benefit. Duncan alleges that in September 1990 she discovered that Alston Attractions, Inc., a corporation in which Stuetzle was a principal, had begun leasing foot massage chairs similar in design to her existing "Footsie Wootsie" and her planned "barrel" model.

On November 9, 1990, Duncan filed a complaint against Stuetzle in California state court. The complaint, not a model pleading, generally outlined three causes of action: (1) misappropriation of proprietary information, (2) unfair competition, and (3) civil conspiracy (later dropped after discovery).[1] The relief

---

1. The relevant sections of the complaint are as follows:

*GENERAL ALLEGATIONS*

. . . .

4. MS. DUNCAN personally owns the design patents, trade mark and service mark for the "FOOTSIE WOOTSIE" commercial foot massage machine, and the remaining Plaintiffs are licensed to use the name and the mark.

. . . .

*FIRST CAUSE OF ACTION*
[For a Permanent Injunction Against All Defendants]

9. Plaintiffs reallege and incorporate herein by this reference each of the allegations contained in Paragraphs 1 through 8 of the General Allegations.

10. Beginning on or about the end of January, 1990, Defendants, and each of them, wrongfully and unlawfully, under the guise of either purchasing Plaintiff DUNCAN's company, or becoming its national distributor, engaged in a campaign of acquiring proprietary information regarding Plaintiffs' foot massage chair, the "Footsie Wootsie". Thereafter, Defendant STUETZLE markedly increased his presence in the foot massage chair market which had, up until then, been minor. He now is marketing foot massage chairs which closely resemble, but which are inferior to the "Footsie Wootsie."

11. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs. MR. STUETZLE's machines intentionally carry no identifying plates or numbers. Because of that fact, because of their resemblance to the "Footsie Wootsie," and because of the "Footsie Wootsie's" preeminence in the market, it is easy for the public to believe that it is using the "Footsie Wootsie" when, in fact, it is using one of the Defendants' machines. By

mimicking Plaintiffs' design and failing to use identifying labels, MR. STUETZLE is trading upon Plaintiffs' good will. By marketing an inferior product, Defendants are devastating that good will.

. . . .

*SECOND CAUSE OF ACTION*
[For Unfair Competition Against All Defendants]

15. Plaintiffs reallege and incorporate herein by this reference each of the allegations contained in the General Allegations.

. . . .

18. Since its introduction into the market, and until the time this Complaint was filed, the Plaintiffs spent large amounts of money in marketing and advertising the rustic and contemporary models of the "Footsie Wootsie" and in creating a consumer demand for the product within the State of California. The "Footsie Wootsie" foot massage chair, as a result of this advertising and marketing, has become widely known in the State and a substantial consumer demand has developed for it.

. . . .

20. On or about the month of January, 1990, in the County of San Luis Obispo, the Defendants obtained proprietary information regarding the "Footsie Wootsie" foot massage chair, regarding, without limitation, the product's exterior and mechanical design, the Plaintiffs' company's marketing strategy, the product's recent income, and the methods by which the machine was produced. The Defendants afterward began to produce their own foot massage chairs which closely resemble the chairs produced by Plaintiffs, and do not carry any identifying labels or machine numbers to distinguish them from Plaintiffs' product. Subsequently, the Defendants began manufacturing and distributing these duplications or reproductions of the "Footsie Wootsie" foot massage chair throughout, as

Duncan requested included a temporary restraining order, preliminary and permanent injunctions, and compensatory and punitive damages. Although the face page of the complaint cited several California statutes, the complaint did not specify whether the claims were based on federal or state law, nor statutory or common law.

On November 29, 1990, Stuetzle timely removed the action, on the grounds that Duncan had alleged "patent infringement" claims over which the district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338. Duncan did not initially object to the exercise of federal jurisdiction. On June 11, 1991, however, one week before trial, she moved to remand the case to state court, arguing that the complaint did not allege patent infringement and that the district court lacked subject matter jurisdiction. Although Stuetzle argues otherwise, Duncan's motion to remand the case was timely (see *infra*).

The district court denied the motion to remand and entered summary judgment for Stuetzle. The court also found that Duncan's claim for misappropriation was made in bad faith and awarded more than $72,000 in attorneys' fees and costs to Stuetzle. Duncan timely and separately appealed each of the court's rulings to this court, which consolidated the appeals and transferred the case, under 28 U.S.C. § 1631, to the U.S. Court of Appeals for the Federal Circuit for a determination of whether the district court properly exercised jurisdiction under federal patent law.

The Federal Circuit reversed the district court's jurisdictional finding. *Duncan v. Stuetzle*, 16 F.3d 420, 1993 WL 514462 (Fed. Cir. Dec. 13, 1993) (unpublished disposition). The court applied the well-pleaded complaint rule and determined that Duncan had not alleged a claim for patent infringement. Rather than dismissing the case, however, the court remanded to the district court for a determination of whether the complaint alleged trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051–1127.[2]

■■■ On remand, the district court found that Duncan's complaint did state a claim arising under the Lanham Act.[3] The court thus reaffirmed its previous denial of Duncan's motion to remand, and reinstated its prior orders granting summary judgment, attorneys' fees and costs to Stuetzle. Duncan timely appealed to this court.[4]

## II

■■■ The removal statute on which Stuetzle relies, 28 U.S.C. § 1441(b), states in relevant part that

far as is known at present, the Southern California area.

21. The foot massage chairs manufactured, distributed, and sold by the Defendants are designed and calculated to deceive and mislead purchasers and consumers of Plaintiffs' foot massage chair. Further, the Defendants' produce has actually deceived, and continues to deceive consumers, and caused them to use the chairs sold by the Defendants, believing that the chairs were manufactured, sold and distributed by the Plaintiffs.

....

*THIRD CAUSE OF ACTION*

[For Civil Conspiracy Against All Defendants]

26. Plaintiffs reallege and incorporate herein by this reference each of the allegations contained in the General Allegations.

27. In the latter portion of 1990, Defendants, and each of them, knowingly and willfully conspired and agreed upon themselves to utilize the proprietary information which has been enumerated in prior Causes of Action to produce and distribute a commercial foot massage chair which closely resembles the rustic model of the "Footsie Wootsie" foot massage chair.

2. The court stated that "[i]f the complaint does state [a Lanham Act claim] ... then the district court did not err in denying Duncan's motion to remand the case to state court...." *Id.*, 1993 WL 514462 at **5 n. 4.

3. The court offered no reasons for its decision.

4. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. Even though the district court apparently attempted to exercise jurisdiction in part on the basis of 28 U.S.C. § 1338(a), the Federal Circuit does not have exclusive appellate jurisdiction over this case under 28 U.S.C. § 1295(a)(1), because the issue on appeal is whether the plaintiffs' complaint stated a claim arising under federal trademark, rather than patent, law. *Cf. Animal Legal Defense Fund v. Quigg*, 900 F.2d 195, 196 (9th Cir.1990), *aff'd*, 932 F.2d 920 (Fed.Cir.1991).

We review the district court's denial of Duncan's motion to remand the case de novo. *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 351, 130 L.Ed.2d 307 (1994).

[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

Because of the "Congressional purpose to restrict the jurisdiction of the federal courts on removal," *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941), the statute is strictly construed, *id.* at 108–09, 61 S.Ct. at 872, and federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (citation omitted). Stuetzle, as one of the original defendants, has the burden of establishing that removal was proper. *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir.1994) (quotations and citations omitted).

■ An action filed in state court may be removed only if the district court could have exercised jurisdiction over the action if originally filed there. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Stuetzle argues on appeal that Duncan's complaint alleged trademark infringement claims over which the district court had jurisdiction under 28 U.S.C. § 1338 [5] and 15 U.S.C. § 1121.[6] In order for either of these statutes to be applicable, and for the district court's exercise of jurisdiction to have been proper, Stuetzle must prove that Duncan's complaint alleged at least one claim "arising under" the Lanham Act (i.e. under federal trademark law).

■ Most of the seminal cases which have addressed the issue of whether a claim is one "arising under" federal law have done so while interpreting 28 U.S.C. § 1331, the gen-

eral federal question statute ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). *See, e.g., Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). These cases have held that in order for a complaint to state a claim "arising under" federal law, it must be clear from the face of the plaintiff's well-pleaded complaint that there is a federal question. *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 840–41, 109 S.Ct. 1519, 1520–21, 103 L.Ed.2d 924 (1989) (per curiam); *Franchise Tax Board*, 463 U.S. at 9–14, 103 S.Ct. at 2846–49; *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); *Redwood Theatres, Inc. v. Festival Enterprises, Inc.*, 908 F.2d 477, 479 (9th Cir.1990). In addition, the plaintiff is the "master" of her case, and if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal. *Id.* (citation, quotation omitted); *Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1412–14 (9th Cir.1990).

■ Because section 1338 contains the same "arising under" language as appears in section 1331, the Supreme Court has held that the principles outlined in the section 1331 cases are equally applicable to section 1338. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988) ("linguistic consistency" demands interpreting identical language in different statutes similarly). The Court's logic mandates applica-

---

5. Section 1338(a) states that:

 [t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent . . . and copyright cases.

 In addition, section 1338(b) states that

 [t]he district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substan-

tial and related claim under the copyright, patent . . . or trade-mark laws.

6. Section 1121(a), part of the Lanham Act, states that:

 [t]he district . . . courts of the United States shall have original jurisdiction . . . of all actions arising under [the Lanham Act], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

tion of these same standards to 15 U.S.C. § 1121 (cases "arising under" the Lanham Act).

■ *Christianson* also distilled these basic principles into a single two-pronged test. Under that test (as applied to this case), federal jurisdiction extends

> only to those cases in which a well-pleaded complaint establishes either that [1] federal [trademark] law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [trademark] law, in that [federal trademark] law is a necessary element of one of the well-pleaded claims.

*Christianson,* 486 U.S. at 808–09, 108 S.Ct. at 2174 (1988) (citations omitted). In addition, in order to satisfy the second prong of this test it is

> [not] necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a [federal trademark] law question is essential. . . . [A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless [federal trademark] law is essential to each of those theories.

*Id.* at 810, 108 S.Ct. at 2174.

### III

Applying the *Christianson* test to Duncan's complaint, we conclude that it does not state a claim arising under the Lanham Act.

### A

■ Because the face of Duncan's complaint does not clearly establish that the Lanham Act creates any of the three claims found in her complaint, the first prong of

*Christianson*'s test is not met in this case. To the contrary, there are no federal statutes, rules, regulations or cases cited at any point in the complaint, and Duncan does not expressly seek any of the broad remedies available under the Lanham Act.[7] The face of the complaint therefore does not state a Lanham Act claim. *See Utley v. Varian Assoc., Inc.,* 811 F.2d 1279, 1283 n. 2 (9th Cir.), *cert. denied,* 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987) ("Utley's causes of action do not specifically invoke Title VII, and thus do not require resolution of any questions arising under it."). This conclusion is buttressed by the Federal Circuit's recital that the allegations in Duncan's complaint "are only consistent with state law causes of action."[8] *Duncan,* 1993 WL 514462 at **4.

### B

■ The complaint also fails *Christianson*'s second prong. In order to satisfy it, Stuetzle must show that resolution of a federal trademark law question is essential to *each* of the alternative theories in support of *any one* of the three causes of action in the complaint. Stated another way, if a single state-law based theory of relief can be offered for each of the three causes of action in the complaint, then the exercise of removal jurisdiction was improper.

### 1

■ The first count in Duncan's complaint alleges, *inter alia,* that Stuetzle improperly acquired and used proprietary information belonging to Duncan. We conclude that a theoretical state law basis in support of this claim exists in California's version of the Uniform Trade Secrets Act, Cal.Civ.Code §§ 3426–3426.11 (hereinafter the "UTSA").[9]

---

7. For example, the complaint does not seek to recover treble damages or the defendant's total profits (see 15 U.S.C. § 1117), nor does the complaint also seek destruction of the allegedly infringing articles (see 15 U.S.C. § 1118).

8. In light of this statement, it is somewhat unclear why the Federal Circuit remanded the case to the district court.

9. Stuetzle correctly points out that Duncan's complaint does not cite to the UTSA. In addition, during oral argument Duncan's counsel argued that her complaint stated "three state *common law* causes of action," thus implying that the complaint did not intend to state a claim under the UTSA. However, for a number of reasons these facts do not preclude this court from concluding that the statute provides a state

The UTSA provides a cause of action for misappropriation of trade secrets. The statute defines "trade secrets" as information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal.Civ.Code § 3426.1(d). The statute defines "misappropriation" as

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret....

*Id.* at § 3426.1(b). Finally, the statute states that "improper means" includes "misrepresentation." *Id.* at § 3426.1(a).

 Duncan's complaint alleges at least a colorable claim under this statute. First, the information Duncan alleges that Stuetzle acquired may well satisfy the definition of "trade secrets."[10] Second, Duncan

law theory in support of the relief requested in Duncan's complaint.

First, it is apparent that California courts would liberally construe the allegations in Duncan's complaint and would attempt to determine if the factual allegations were sufficient to state a claim under the UTSA. As explained in *Alexandrou v. Alexander,* 37 Cal.App.3d 306, 112 Cal. Rptr. 307 (2 Dist.1974), "[t]he nature and character of a pleading are determined from the allegations. The court is not limited to plaintiffs' theory, but instead must determine if the factual allegations of the complaint are adequate to state a cause of action under any legal theory." *Id.,* 37 Cal.App.3d at 313, 112 Cal.Rptr. at 311 (citations omitted). In addition, under California law it is not necessary for Duncan to have cited the UTSA in order to state a claim under that statute. *See, e.g., Kreutzer v. County of San Diego,* 153 Cal.App.3d 62, 200 Cal.Rptr. 322 (4 Dist.1984):

Respondents initially point out Kreutzer did not bring his petition specifically pursuant to [42 U.S.C. § 1983]. It is true Kreutzer did not caption his petition as being brought under section 1983, nor did he specifically mention section 1983 in the body of the petition. In California, however, the nature and character of a pleading are to be determined from its allegations, regardless of what they may be called, and the subject matter of the action and the issues involved are determined from the facts alleged rather than from the title of the pleading.

*Id.,* 153 Cal.App.3d at 69, 200 Cal.Rptr. at 326 (citation omitted). Finally, on this same point see *Porten v. University of San Francisco,* 64 Cal.App.3d 825, 833, 134 Cal.Rptr. 839, 844 (1 Dist.1976) ("Although the complaint may not be a model pleading, the policy of the law is to construe pleadings liberally to the end that cases will be tried on their merits rather than disposed of on technicalities of pleadings. Mistaken labels and confusion of legal theory are not fatal; if appellant's complaint states a cause of action on any theory, he is entitled to introduce evidence

thereon. An action cannot be defeated merely because it is not properly named.") (citations omitted).

The second reason this court may examine the UTSA is that *Christianson* specifically states that "[i]f 'on the face of a well-pleaded complaint there are ... reasons completely unrelated to the provisions and purposes of [the Lanham Act] why the [plaintiff] may or may not be entitled to the relief [she] seeks,' ... then the claim does not 'arise under' [the Lanham Act]." *Christianson,* 486 U.S. at 810, 108 S.Ct. at 2174 (quoting *Franchise Tax Board,* 463 U.S. at 26, 103 S.Ct. at 2855). This language mandates that we determine whether, in light of the allegations appearing on the face of Duncan's complaint, the UTSA might provide a state law theory in support of the relief requested in that complaint.

Third, as noted above, the removal statute is strictly construed against jurisdiction, *Shamrock Oil & Gas Corp., supra,* 313 U.S. at 108–09, 61 S.Ct. at 872, and Stuetzle has the burden of proving that Duncan's claims may be cognizable only under the Lanham Act. These facts lend further support to our conclusion that we should analyze the UTSA to determine if it provides a theory of recovery which might be available to Duncan.

10. Stuetzle argues that Duncan could not have stated a claim under the UTSA because her complaint does not use the words "trade secrets" (she uses the phrase "proprietary information"), and because there is no allegation in the complaint that the information given to him by Duncan was "secret" or "confidential." This argument is flawed for three reasons. First, Stuetzle cites no case law which suggests that a claim brought under the UTSA must use this precise language. Second, the complaint clearly alleges that the proprietary information Stuetzle allegedly acquired was not public, and that Duncan intended to keep it confidential. Third and most importantly, the test under *Christianson* is not

has arguably alleged facts satisfying the definition of "misappropriation." The complaint specifically alleges that Stuetzle, "under the guise of either purchasing Plaintiff DUNCAN's company, or becoming its national distributor, engaged in a campaign of acquiring proprietary information regarding Plaintiffs' foot massage chair, the 'Footsie Wootsie.'" Complaint, ¶ 10. The complaint also alleges that Stuetzle improperly used that information to develop his own competing device. Finally, the complaint alleged that Stuetzle obtained this information by "improper means," namely by obtaining it from her while pretending to be conducting business negotiations. In sum, the allegations at least arguably state a claim under the statute, and the statute therefore provides a state law theory in support of Duncan's requested relief.[11]

Stuetzle argues that Duncan's claim for misappropriation is necessarily a Lanham Act claim because the relief Duncan requested under the claim is available only under federal law. On the basis of her claim, Duncan sought a temporary restraining order, preliminary and permanent injunctions, and compensatory damages. These remedies are available under the UTSA, and thus Stuetzle's argument is without merit.

First, Duncan's requested injunctive relief is available under UTSA § 3426.2(a) ("Actual or threatened misappropriation may be enjoined."). Stuetzle argues that Duncan's claim for injunctive relief requires a federal remedy because Duncan requested an injunction prohibiting Stuetzle from participating in a *national* trade show in *Washington, D.C.*. Stuetzle argues that the complaint thus alleged facts implicating interstate commerce, and that Duncan's requested relief is therefore only available under federal law. In support, he cites J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (Clark, Boardman, Callaghan, 3rd ed.1995), Vol. 4, § 32.02[4][c], pp. 32–19—32–20 ("A plaintiff in state court who wishes to stay there must carefully word the complaint to avoid tracking the language of Lanham Act § 43(a) and to avoid any reference to interstate usage by either plaintiff or defendant.").

On the surface, this argument appears strong. However, it is undermined by two facts. Duncan's complaint alleges intrastate, rather than interstate, violations by Stuetzle.[12] Also, California courts have repeatedly held that they have authority to issue injunctions which have effect beyond the borders of

whether the plaintiff met the pleading requirements of the state law under which she claims relief; it is whether such a state law *exists*.

**11.** Stuetzle argues that this first claim necessarily states a claim for trademark infringement, because the only items of "proprietary information" which Duncan specifically cites under this claim are her "design patents, trade marks and service mark...." Stuetzle bases his conclusion on the fact that Duncan incorporated into each of her three claims the statement, made in the "General Allegations" section of the complaint, that she owned the trademark to the "Footsie Wootsie." Complaint, ¶ 4.

However, in her request for relief under this first claim, Duncan clarifies that the proprietary information allegedly given to Stuetzle included "information relating to the 'Footsie Wootsie's' exterior and mechanical designs, business plan and past income...." Complaint, ¶ 11. In addition, later in the complaint Duncan states that the proprietary information allegedly taken included "the company's marketing strategy, the product's recent income, and the methods by

which the machine was produced." Complaint, ¶ 20. Because these items may well qualify as "trade secrets" under California law, the success of Duncan's misappropriation claim does not depend on whether she can prove that Stuetzle misappropriated her trademark. A complaint's mere mention of the existence of a protected trademark, without more, does not provide a basis for federal jurisdiction. *Postal Instant Press v. Clark*, 741 F.2d 256, 257 (9th Cir.1984).

**12.** For example, the complaint alleges that the plaintiffs have created a consumer demand for the "Footsie Wootsie" *"within the State of California,"* and that the "Footsie Wootsie" has become widely known *"in the State."* Complaint, ¶ 18 (emphasis added). In addition, the complaint specifically alleges that "the Defendants began manufacturing and distributing these duplications or reproductions of the 'Footsie Wootsie' foot massage chair throughout, as far as is known at present, *the Southern California area."* Complaint, ¶ 20 (emphasis added). Other than the request for injunctive relief in Washington, D.C., there is no explicit reference anywhere in the complaint to interstate commerce.

California.[13] In sum, we conclude that a state law theory in support of Duncan's claim for injunctive relief existed at the time she filed her complaint.[14]

Finally, the compensatory damages Duncan requested under this claim are available under UTSA § 3426.3(a) ("A complainant may recover damages for the actual loss caused by misappropriation.").

### 2

▮ Duncan's second count alleged unfair competition. California provides both statutory and common law causes of action for unfair competition. The statutory cause of action is governed by Cal.Bus. & Prof.Code § 17200, *et seq.;* the common law cause of action is discussed in *Bank of the West v. Superior Court (Indus.Indem.Co.)*, 2 Cal.4th 1254, 1263–65, 833 P.2d 545, 550–52, 10 Cal.

Rptr.2d 538, 543–45 (1992) (in bank). Each of these causes of action provides a theoretical state law basis for Duncan's requested relief.

With respect to this claim, Stuetzle once again argues that the claim is necessarily federal, because the relief Duncan requested is available only under federal law. Once again, this argument is without merit.

Duncan sought essentially the same relief under this count as she sought under her claim for misappropriation,[15] but she also requested exemplary (punitive) damages. First, Duncan's claim for injunctive relief can be supported by Cal.Bus. & Prof.Code § 17203 (West 1992) ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."). Second, while Stuetzle correctly notes that compensa-

---

**13.** *See, e.g., Pines v. Tomson*, 160 Cal.App.3d 370, 399–400, 206 Cal.Rptr. 866, 885 (2 Dist.1984) ("a court having jurisdiction of the parties may grant and enforce an injunction, although the injunction ... requires defendant to do or refrain from doing anything *beyond its territorial jurisdiction* which it could require him to do or refrain from doing within the jurisdiction") (citation omitted) (emphasis added); *Allied Artists Pictures Corp. v. Friedman*, 68 Cal.App.3d 127, 136, 137 Cal.Rptr. 94, 99 (2 Dist.1977) (same); *People ex rel. Mosk v. Nat'l. Research Co. of California*, 201 Cal.App.2d 765, 20 Cal.Rptr. 516 (3 Dist.1962) ("The circumstance that the decree was given an extraterritorial effect does not impair its validity. In granting injunctive relief the court acted in personam against the defendants, and it is immaterial that the control it asserts over their actions extends beyond the boundaries of California."). *Id.*, 201 Cal.App.2d at 776, 20 Cal.Rptr. at 523 (citations omitted).

In addition, see *Golden Door, Inc. v. Odisho*, 437 F.Supp. 956, 965–68 (N.D.Cal.1977), *aff'd*, 646 F.2d 347 (9th Cir.1980). In that case, the plaintiff filed suit under California's trademark infringement statutes (Cal.Bus. & Prof.Code §§ 14320(a), 14330). The court held that, on the basis of authority granted by these state statutes, the plaintiff was "entitled to injunctive relief ... against infringement of its trademark *without geographical limitation.*" *Id.* at 966. The court therefore issued an injunction with "nationwide" scope. *Id.* at 968. This decision suggests that even if Duncan's complaint is deemed to state a trademark claim, her requested injunctive relief may well be available under California state trademark law, and thus does not require a Lanham Act remedy.

It is important to note that we do not address, nor do we decide, the issue whether California

state courts may validly issue injunctions with extraterritorial effect. We merely note that at the time Duncan's complaint was filed, these decisions provided a state law basis for the injunctive relief requested in her complaint. Stuetzle's argument that the complaint necessarily sought a Lanham Act remedy must therefore fail.

**14.** We briefly note here that Stuetzle's reliance on *Stauffer v. Exley*, 184 F.2d 962 (9th Cir.1950) is misplaced. During oral argument, Stuetzle cited this case in support of his argument that jurisdiction was proper under the Lanham Act because Duncan's complaint alleged facts implicating interstate commerce.

In *Stauffer*, this court stated that "[a]n infringement committed in intrastate commerce but affecting interstate commerce could clearly be regulated by Congress and thus would be within the present [Lanham] Act." *Id.* at 966. *Stauffer* thus stands for the basic principle, a principle which we reaffirmed in *Thompson Tank & Mfg. Co., Inc. v. Thompson*, 693 F.2d 991, 992–93 (9th Cir.1982), that the word "commerce" as used in the Lanham Act includes intrastate commerce which affects interstate commerce.

*Stauffer* is not on point here. The issue in this case is not whether Duncan's complaint alleges facts implicating interstate commerce sufficient to warrant the exercise of Lanham Act jurisdiction; it is whether her complaint states a claim "arising under" that Act. Our analysis on this issue is controlled by *Christianson*, and *Stauffer* is therefore inapposite.

**15.** She sought a temporary restraining order, preliminary and permanent injunctions, and compensatory damages.

tory damages are not available under California's unfair competition statute, *see Bank of the West*, 2 Cal.4th at 1265–66, 833 P.2d at 552, 10 Cal.Rptr.2d at 545, he neglects to point out that such damages *are* recoverable under California's *common law* tort of unfair competition. *Id.*

Third and finally, Stuetzle asserts that Duncan's intent to state a Lanham Act claim is evidenced by the fact that punitive damages are not available under state law but are available under the Lanham Act. We disagree. As an initial matter, punitive damages are in fact available under state law. Cal.Civ.Code § 3294(a) (West.Supp.1992) states that:

> [i]n an action for the breach of an obligation not arising from contract [i.e., tort], where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal.Civ.Code § 3294(a). We are aware of no authority which suggests that this provision may not be applied to common law unfair competition claims. *Cf. Kelley Blue Book v. Car–Smarts, Inc.*, 802 F.Supp. 278, 289 (C.D.Cal.1992) (declining to award punitive damages under § 3294(a) to a claimant alleging common law unfair competition solely because the plaintiff did not prove oppression, fraud or malice by clear and convincing evidence). Duncan has arguably alleged "fraud" as defined by the statute;[16] as such, punitive damages may be available to her on this basis.

As to Stuetzle's second argument, this court has previously noted that punitive damages are not available under the Lanham Act. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 200 n. 1 (9th Cir.1989); *see also Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Stuetzle's argument that Duncan's request for such damages indicates an intent to pursue a Lanham Act claim therefore necessarily fails.

### 3

■ Duncan's last claim is for civil conspiracy. Duncan alleged that Stuetzle conspired with the other defendants to use the misappropriated proprietary information to produce a competing foot massage machine. Under this claim, Duncan sought punitive and compensatory damages (she did not seek injunctive relief).

■ California recognizes the common law tort of civil conspiracy. *Unruh v. Truck Ins. Exchange*, 7 Cal.3d 616, 631, 498 P.2d 1063, 1074, 102 Cal.Rptr. 815, 826 (1972) (in bank). In order to state a claim under this tort, a complaint must allege "(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting." *Id.* (citation omitted). Furthermore, Duncan's requested relief is also available under state law. Compensatory damages are not only available under this tort, a specific allegation of damages is an essential element of the claim. *Id.; Wade v. 20th Century Ins. Co.*, 206 Cal.App.3d 32, 38, 253 Cal.Rptr. 361, 364 (2 Dist.1988). In addition, as was the case with her claim for unfair competition, Duncan may be able to recover punitive damages under this claim on the basis of Cal.Civ.Code § 3294(a). Neither prong of the *Christianson* test has been met in this case.

### IV

Because each of Duncan's stated claims is supported by at least one state law theory of

---

16. Section 3294(c) defines "fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal.Civ. Code § 3294(c)(3). Duncan's complaint alleged that Stuetzle "engaged in a campaign of acquiring proprietary information" "under the guise of either purchasing Plaintiff DUNCAN's company, or becoming its national distributor." Complaint, ¶ 10.

recovery not dependent upon the Lanham Act, the complaint does not state a claim "arising under" that Act for the purposes of removal jurisdiction.[17] *Cf. Ultramar,* 900 F.2d at 1414 (9th Cir.1990) (under *Christianson,* "[t]he fact that an alternative theory of relief exists for each claim alleged in the complaint, one not dependent upon federal law, is itself grounds to defeat federal question jurisdiction"). The district court therefore lacked subject matter jurisdiction.[18]

The district court's judgment in favor of Stuetzle is reversed and remanded with instructions that the district court enter an order granting Duncan's motion to remand the case to state court.[19]

REVERSED.

---

**17.** We assume, without deciding, that Duncan's claims might also be cognizable under the Lanham Act. *See, e.g., Cleary v. News Corp.,* 30 F.3d 1255, 1263 (9th Cir.1994) (state common-law claims of unfair competition and actions pursuant to California statute prohibiting unfair business practices are "substantially congruent" to claims made under Lanham Act). However, this fact is irrelevant, because under *Christianson* the jurisdictional question turns solely on whether a theory of recovery *other* than the Lanham Act exists. *See, e.g., Mulcahey v. Columbia Organic Chemicals Co, Inc.,* 29 F.3d 148, 153 (4th Cir. 1994) (*"Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.").

**18.** We briefly address here Stuetzle's argument that Duncan has waived her right to contest the jurisdictional issue. Stuetzle relies on 28 U.S.C. § 1447(c), which states in part that "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)." Stuetzle argues that Duncan violated this statute because she did not file her remand motion until six months after the filing of the notice of removal.

This argument is without merit. Section 1447(c) goes on to say that "[i]f *at any time before final judgment* it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (Emphasis added). Stuetzle's argument confuses defects in the removal procedure with lack of subject matter jurisdiction. Duncan's motion to remand, which alleged lack of subject matter jurisdiction rather than a defect in the removal procedure, was filed before the trial even began; as such, it was timely.

**19.** Because of our ruling on the jurisdictional issue, we need not address Duncan's arguments on the issues of summary judgment or attorneys' fees.