**In re EDWARD JONES HOLDERS LITIGATION**

No. CV06–1974FMC(VBKX).

United States District Court, C.D. California.

Sept. 25, 2006.

David M. Harris, David P. Niemeier, James H. Ferrick, Greensfelder, Hemker and Gale, St. Louis, MO, Evan Ray Goldstein, Peter B. Gelblum, Seth E. Pierce, Mitchell Silberberg & Knupp Los Angeles, CA, for Edward Jones Holders Litigation.

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND

COOPER, District Judge.

This matter is before the Court on Plaintiffs' Motion to Remand (docket no. 32), filed May 4, 2006. The Court has considered the moving, opposition, reply and sur-reply documents submitted in connection with the motion. The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7-15. Accordingly, the hearing set for October 16, 2006, is removed from the Court's calendar. For the reasons and in the manner set forth below, the Court hereby DENIES the Motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant, Edward D. Jones & Co., L.P., d/b/a Edward Jones ("Defendant" or "Jones"), is one of the largest brokerage houses in the country, providing clients with investment advice on a variety of investments, including mutual funds, through its network of 9,000 brokers. *See* Consolidated Amended Individual Complaint, Complaint on Behalf of the Public and Class Action Complaint ("Compl."), September 16, 2004, ¶ 9. In their operative Complaint, Plaintiffs Todd Bressler and William O. Potter ("Plaintiffs"), individually and on behalf of the public and a Class of others similarly situated, seek restitution and disgorgement of monies gained by Defendant as a result of its alleged violation of California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, and breach of its fiduciary duties to Plaintiff and the Class. Specifically, Plaintiffs allege that Defendant entered into agreements with certain mutual fund companies whereby Defendant placed the companies on an internal "Preferred Funds" list and received retention "kickbacks" based on the amount of money held by Plaintiff and the Class members in those funds. *Id.* ¶¶ 13-15, 17. In order to maximize the amount of the kickbacks, Defendant allegedly offered Plaintiffs and the Class biased advice to maintain their accounts with De-

fendant and their holdings in the Preferred Funds. *Id.* ¶¶ 2, 28, 41.[1] At no time did Defendant disclose the "existence, nature, amount and source of the retention kickbacks" to Plaintiffs, the Class or the public. *Id.* ¶¶ 40, 42.

On February 24, 2004, Defendant removed the case to this Court, arguing that the state law claims were preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). On March 22, 2004, Plaintiff (Bressler) moved to remand.[2] After full briefing, the Court found that, because the alleged wrongdoing by Defendant was not "in connection with the purchase or sale of covered securities," SLUSA did not apply. Accordingly, the Court granted Plaintiff's motion and remanded the action to state court. *See generally* Order Granting Plaintiff's Motion to Remand, Case No. CV 04–1219 FMC (RNBx), May 11, 2004.

Slightly less than two years later, on March 31, 2006, Defendant filed a second Notice of Removal, asserting that the Supreme Court's intervening decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 548 U.S. ——, 126 S.Ct. 1503, 164 L.Ed.2d 179 (March 21, 2006), compels a finding that Plaintiffs' claims are in fact preempted by SLUSA. Plaintiffs dispute the applicability of the *Dabit* decision to the facts of this case, as well as Defendant's compliance with proper removal procedures and, concomitantly, move to remand once again.

## LEGAL STANDARD

■ A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pitts-*

*burg–Des Moines Steel Co.,* 69 F.3d 1034, 1038 (9th Cir.1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus,* 980 F.2d at 566; *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996).

## DISCUSSION

### I. As Plaintiffs' Motion is Untimely, All Objections to Procedural Defects in the Removal Process Are Waived

■ As a threshold matter, Plaintiffs argue that remand is warranted due to what they perceive to be specific procedural defects in the filing of the Notice of Removal. Mot. at 5–16. First, Plaintiffs maintain that the Notice of Removal is defective because it was not filed within the time limitations set forth under 28 U.S.C. § 1446(b). Second, Plaintiffs fault Defendant for filing a "successive" removal notice—i.e., predicating removal on the same legal theory as was previously advanced and rejected by the Court in its (pre-*Dabit*) Order of May 11, 2004, in Case No. 04–1219 FMC (RNBx). However, because Plaintiffs' Motion to Remand was filed outside of the thirty (30) day period prescribed under 28 U.S.C. § 1447(c), the Court cannot entertain Plaintiffs' objections to Defendant's failure

---

**1.** The Class is alleged to consist of "all current and former Jones customers (including persons and entities) resident in the State of California who held shares of the Preferred Funds mutual funds during the Class Period and were damaged thereby." *Id.* ¶ 46.

**2.** Plaintiff Bressler was the only named Plaintiff in the original complaint.

to follow proper removal procedure(s).[3]

■ Pursuant to 28 U.S.C. § 1447(c), "[a] motion to remand [a] case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal ...." 28 U.S.C. § 1447(c) (2006); *see also N. Cal. Dist. Council of Laborers*, 69 F.3d at 1038 ("[T]he district court had no authority to remand the case to the state court on the basis of a defect in removal procedure raised for the first time more than 30 days after the filing of the notice of removal."); James Wm. Moore, 16 Moore's Federal Practice § 107.41[1][d] (Matthew Bender 3d ed.) ("A party that fails to object to a procedural defect within the 30–day limit waives its right to object."). In addition, *sua sponte* remand of cases for defects in the removal procedure is strictly prohibited. *See Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir.2003).

■ Here, Plaintiffs acknowledge that Defendant filed its Notice of Removal on March 31, 2006 and that the Motion to Remand was filed, at the earliest, thirty-two (32) days later, on May 2, 2006. *See* Decl. of Marc L. Godino in Support of Plaintiffs' Reply ¶ 6.[4] Nevertheless, Plaintiffs insist that their motion was timely filed pursuant to operation of Fed.R.Civ.P. 6(e). Specifically, Plaintiffs argue that the Rule afforded them an additional three days' filing time because the Notice of Removal was served upon them by mail. The Court disagrees.

As several other courts have recognized, "Rule 6(e) is limited to those periods of time which are initiated by 'service of notice.' It is not extended to periods of time which are initiated by 'filing.'" *Delew v. Las Vegas Metro. Police Dep't*, 108 F.Supp.2d 1146, 1148 (D.Nev.2000) (holding Rule 6(e) inapplicable to period for filing motion to remand under 28 U.S.C. § 1447(c)) (citing William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 2:1089.7a) (citing *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 566 (5th Cir.1995) (motion to remand for procedural defects filed 33 days after notice of removal untimely)); *see also 1015 Half St. Corp. v. Warehouse Concepts, Inc.*, 1999 WL 1212885, *4, 1999 U.S. Dist. LEXIS 19135 *13 n. 7 (D.D.C.1999) ("Federal Rule of Civil Procedure 6(e) does not extend the thirty-day period provided by § 1447(c)."); 16 Moore's Federal Practice § 107.41[1][d] ("The 30–day period [under 28 U.S.C. § 1447(c)] runs from the date that the notice of removal is filed, not from when the plaintiff is served with the notice. The time limit is not extended if the defendant mails the notice to the plaintiff.").

Accordingly, even assuming arguendo that Plaintiffs' Motion to Remand was filed as of May 2, 2006, the thirty-second day from the filing of the Notice of Removal, it is still untimely, such that Plaintiffs have failed to preserve their right to challenge removal on the basis of procedural defects.

---

**3.** It is well-established that "untimely removal is a procedural defect and not jurisdictional ...." *Maniar v. F.D.I.C.*, 979 F.2d 782, 784 (9th Cir.1992). Plaintiff concedes that its objection to Defendant's Notice of Removal as constituting a "second" or "successive" notice is also an objection to a purely *procedural* defect. *See* Mot. at 15; Reply at 13.

**4.** The "Motion to Remand" that Plaintiffs "filed" on May 2, 2006 contained the wrong case number in the caption; thus, it was rejected by the Clerk. The document was re-filed with the correct case number on May 4, 2006, thirty-four (34) days after the filing of the Notice of Removal. *Id.* ¶¶ 7–8.

## II. Remand is Not Otherwise Warranted Because Plaintiffs' Claims are Preempted by SLUSA

"SLUSA is a federal statute that preempts state-law securities actions under certain circumstances." *Smith v. Arthur Andersen LLP,* 421 F.3d 989, 1007 (9th Cir.2005) (internal quotations omitted). It provides, in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b)(1)-(2); *see also* 15 U.S.C. § 78bb(f)(1)(A)-(B). Accordingly, SLUSA preemption is triggered when the following conditions are met: (1) the underlying suit is a "covered class action," (2) the action is based on state law, (3) the action concerns a "covered security," and (4) the defendant is alleged to have misrepresented or concealed a material fact or used or employed a manipulative device or contrivance "in connection with the purchase or sale" of a security.[5]

In the instant case, Plaintiffs do not dispute that both the class and the mutual fund securities at issue are "covered" under the SLUSA. However, they argue that Defendant's allegedly wrongful conduct—the acceptance of the retention kickbacks and failure to inform Plaintiffs, the Class and the public about the same—does not involve fraud "in connection with the purchase or sale" of the securities. Mot. at 16–17.

Although previously persuasive to the Court, Plaintiffs' arguments are no longer tenable given the Supreme Court's recent holding in *Dabit, supra. Dabit* was a class action brought by a former broker (Dabit) of the investment firm of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), on behalf of a class of former and current brokers who "owned and continued to own" certain securities during the relevant class period. 126 S.Ct. at 1507–08. As the Court explained, "[t]he gist of Dabit's complaint was that Merrill Lynch breached the fiduciary duty and covenant of good faith and fair dealing it owed its brokers by disseminating misleading research and thereby manipulating stock prices." *Id.* at 1507. "Dabit asserted that Merrill Lynch's actions damaged the class members in two ways: The misrepresentations and manipulative tactics caused them to hold onto overvalued securities, and the brokers lost commission fees when their clients, now aware that they had made poor investments, took their business elsewhere." *Id.*

The only issue before the Court (on *certiorari* from the Court of Appeals for the Second Circuit) was whether Merrill Lynch's alleged wrongdoing occurred "in connection with the purchase or sale" of

---

**5.** As the Court noted in its Order Granting Plaintiff's Motion to Remand in Case No. 04–1219 FMC (RNBx), Congress passed SLUSA to close a loophole in the Private Securities Litigation Reform Act ("PSLRA"), which was intended to deter "strike suits" by imposing stricter pleading requirements. To avoid PSLRA's heightened pleading requirements, plaintiffs began filing securities claims in state courts alleging state law causes of action. SLUSA was passed to deter that practice and return securities fraud cases to federal court. *See* Order Granting Plaintiff's Motion to Remand, Case No. 04–1219 FMC (RNBx), May 11, 2004, at 4.

securities. *Id.* at 1512. The Court concluded that it did, rejecting Merrill Lynch's contention that "an alleged fraud is 'in connection with' a purchase or sale of securities only when the plaintiff himself was defrauded into purchasing or selling particular securities." *Id.* at 1513. Accordingly, the Court explicitly recognized that SLUSA operates to pre-empt actions brought by *holders* of securities, as well as purchasers and sellers. *Id.* at 1515 ("The holder class action that respondent tried to plead, and that the Second Circuit envisioned, is distinguishable from a typical Rule 10b–5 class action in only one respect: It is brought by holders instead of purchasers or sellers. For the purposes of SLUSA pre-emption, that distinction is irrelevant....").[6]

■ In light of the *Dabit* decision, it is clear to the Court that Plaintiffs' "holder" claims arise "in connection with the purchase or sale" of securities. As set forth above, the gravamen of Plaintiffs' Complaint is that Defendant willfully tailored and distorted its investment advice to steer Plaintiffs and the class members to the Preferred Funds, then encouraged them to hold those funds for the long term. Although precise allegations are "artfully" absent, it is virtually axiomatic that, had Plaintiff and the other Class members re-

ceived "unbiased" investment advice, they would have sold their Preferred Fund shares earlier or refrained from purchasing them in the first instance, thereby eliminating or significantly reducing the corresponding kickbacks. Thus, the Court concludes that the conduct which forms the basis for Defendant's alleged illegal scheme falls within the ambit of SLUSA. *See id.* at 1513 ("Under our precedents, it is enough that the fraud 'coincide' with a securities transaction—whether by the plaintiff or by someone else.") (internal citations omitted); *see also SEC v. Zandford,* 535 U.S. 813, 822, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) ("It is enough that the scheme to defraud and the sale of securities coincide.").[7]

As Defendant points out, the Court's conclusion is consistent with other recent federal court decisions addressing similar "kickback" or "revenue sharing" schemes correlated to investors' purchase and/or retention of specific securities. For example, in *In re Franklin Mut. Funds Fee Litig.,* 388 F.Supp.2d 451 (D.N.J.2005), the District Court for the District of New Jersey concluded that SLUSA operated to pre-empt state law claims, brought by investors against their "investment advisers," for breach of fiduciary duty/unjust enrichment. In determining that the

---

**6.** In reaching this conclusion, the Supreme Court explicitly rejected the reasoning of this Court in its prior remand order. *See* Order Granting Plaintiff's Motion to Remand, Case No. 04–1219 FMC (RNBx), May 11, 2004, at 6 ("The Court finds that Plaintiff expressly disclaimed any injury resulting from the initial purchase of mutual fund shares, and the Complaint is limited only to injury resulting from Plaintiff's retention of mutual fund shares. Accordingly, the Complaint was not properly removable under SLUSA.").

**7.** The fact that Plaintiffs insist on characterizing Defendant's conduct as "willful" or "unlawful" rather than "fraudulent," further raises the question of artful pleading on their

part. Numerous other federal courts, both before and after *Dabit,* have strictly scrutinized complaints "to arrive at the 'essence' of a state law claim, in order to prevent artful drafting from circumventing SLUSA preemption." *Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 301 (3d Cir.2005); *see also Dudek v. Prudential Secs., Inc.,* 295 F.3d 875, 880 (8th Cir.2002) ("fairly read, plaintiffs' Iowa complaint alleges that defendants 'used or employed [a] deceptive device or contrivance in connection with the purchase or sale of a covered security,' a claim expressly preempted by 15 U.S.C. §§ 77p(b)(2) and 78bb(f)(1)(B).").

claims arose. "in connection with the purchase and sale of securities," the court explained:

> Plaintiffs' state law claims allege that defendants engaged in a fraudulent scheme, the purpose of which was to push investors into mutual funds in order to increase fees and other charges, thereby injuring shareholders. As in *Rowinski*, the only way for this scheme to succeed was for investors to purchase securities (shares of the defendant mutual funds). Thus, defendants' fraudulent scheme necessarily "coincided" with the purchase of securities.

388 F.Supp.2d at 472.

Similarly, in *In re Am. Funds Fees Litigs*, 2005 U.S. Dist. LEXIS 41884 (C.D.Cal.2005)(J. Feess), the district court determined that plaintiffs' state law claims for breach of fiduciary duty, unfair competition, and unjust enrichment, arising out of brokers' receipt of kickbacks in exchange for the aggressive promotion of particular mutual funds, were preempted by SLUSA, due to their inextricable interrelationship with "the purchase and sale of securities." 2005 U.S. Dist. LEXIS 41884 at *25. Specifically, the court reasoned:

> The impact of a scheme "coincides" with the purchase or sale of securities where the essence of that scheme was tied directly to the purchase of securities. Here the scheme is this: Defendants paid brokers to induce investors to purchase shares in American Funds mutual funds, and used the proceeds of the earnings from those funds to fund the payments to the brokers.
>
> \*   \*   \*   \*   \*   \*
>
> Thus, the success of Defendants' conduct here necessarily required purchases, indeed increased purchases, of securities.

*Id.* at *27–29. The court also refused to accept plaintiffs' argument that, by limiting their allegations to include only "holders" of the relevant funds, they could effectively avoid bringing their claims within SLUSA's pre-emptive purview:

> Plaintiffs maintain that because they styled the CAC as being on behalf only of those who "held shares, units, or like interests" in any of the funds during the class period, SLUSA preemption does not apply. [citation]. Despite this wording, the scheme at issue in this case falls squarely within the scope of actions that Congress intended to take control of through SLUSA and the Private Securities Litigation Reform Act of 1995, in the first instance. "It is well-established that an artfully drafted complaint cannot circumvent SLUSA preemption." *Franklin*, 388 F.Supp.2d at 473 (citations omitted).

*Id.* at * 26–27. In light of *Dabit*, this Court cannot discern any basis upon which to reject this reasoned analysis vis a vis the facts of the instant action. *See Dabit*, 126 S.Ct. at 1509 ("The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated.").

Indeed, consideration of the specific policy concerns invoked by the *Dabit* Court only further supports a finding that the pre-emptive force of SLUSA should extend to this case. Central among those concerns was the fact that allowance of parallel state law actions on behalf of securities "holders" would give rise to "wasteful, duplicative litigation," in that "[f]acts supporting an action by purchasers under Rule 10b–5 (which must proceed in federal court if at all), typically support an action by holders as well ...." *Dabit*, 126 S.Ct. at 1514. This appears to have been a particularly prescient observation, since,

as Defendant points out, there *is* a pending federal securities law class action, in the Eastern District of Missouri, that is predicated on very same conduct which is at issue here. *See* Opp'n at 22 (referencing litigation in *Spahn v. Edward Jones & Co.,* CV No. 04–0086 (E.D.Mo.)).[8] Thus, allowing Plaintiffs to proceed with their California state court action would encourage duplicative litigation and, consequently, undermine "the congressional preference for national standards for securities class action lawsuits involving nationally traded securities." *Dabit,* 126 S.Ct. at 1514 (citations omitted).

### III. Dismissal is the Only Appropriate Alternative

■ It is well established that, once a court determines that a given state law action is preempted by the SLUSA, it must be dismissed. *See Kircher v. Putnam Funds Trust,* 548 U.S. ——, 126 S.Ct. 2145, 2155, 165 L.Ed.2d 92 (2006) ("If the action is precluded, neither the District Court nor the state court may entertain it, and the proper course is to dismiss."). Here, Plaintiffs nonetheless seek to avoid dismissal on the basis that Defendant's removal constitutes, in their opinion, a calculated strategy to avoid compliance with its obligations under a settlement agreement purportedly reached by the parties to both this case and the *Spahn* action. However, as the documents submitted in connection with Defendant's Sur–Reply make clear, the settlement is not yet final, due to the parties' ongoing negotiations regarding certain material terms, and has never been approved by any court. *See also* Decl. of Marc. L. Godino in Support of Plaintiffs' Reply, Exhibit A (Memorandum

of Understanding For Edward Jones State and Federal Class Actions: *Spahn, Enriquez,* and *Bressler*) ¶ 10 ("The parties acknowledge that this is an understanding in principle on the above issues, subject to further negotiations in order to result in a fully integrated settlement agreement . . . ."). The parties' ongoing negotiations are not appropriate for consideration by the Court in relation to the issue of SLUSA pre-emption; although this action has been pending for several years, the simple fact remains that, after *Dabit,* neither this Court nor any state court has jurisdiction to hear it.

### CONCLUSION

Based on the forgoing, Plaintiff's Motion to Remand (docket no. 32) is **DENIED** and the action is **DISMISSED** in its entirety.

IT IS SO ORDERED.

---

8. The Court, *sua sponte,* takes judicial notice of the *Spahn* proceedings. *See* Fed.R.Evid. 201(c); *United States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992) (federal court may "take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").